**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |
|---|---|
| **TAVERN DOWNING, SR,** *et al.,*<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**JESSE THOMPSON,** *et al.,*<br><br>    *Defendants.* | **CIVIL ACTION NO.<br>5:24-cv-00277-TES** |

**ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

Before the Court is a Motion to Dismiss [Doc. 14] filed by Defendants Morris

Network, Inc., d/b/a WMGT-TV, and Sinclair Communications, LLC, d/b/a WGXA,

collectively referred to as the "Media Defendants." The Media Defendants seek

dismissal for various reasons arising under Federal Rule of Civil Procedure 12. [Doc. 14,

p. 1]. The Media Defendants filed the instant Motion to Dismiss [Doc. 14] on October 31,

2024. Plaintiffs filed a Response [Doc. 25] on November 14, 2024.[1]

---

[1] Once again, only Plaintiff Tavern Downing, Sr. signed the Response. [Doc. 25, p. 8]. As the Court warned in its previous Order, "Federal Rule of Civil Procedure 11 requires all parties not represented by counsel to personally sign each 'pleading, written motion, and other paper,' filed in federal court." [Doc. 12, p. 3 (citing Fed. R. Civ. P. 11(a))]. **Plaintiffs are warned one final time that any future filings not signed by all remaining Plaintiffs will be disregarded, and Plaintiffs will run the risk of having their claims dismissed for failure to follow a court order.** *See* Fed. R. Civ. P. 41(b); *Brown v. Tallahassee Police Dep't*, 205 F. App'x 802, 802 (11th Cir. 2006) (per curiam) (first citing Fed. R. Civ. P. 41(b); and then citing *Lopez v. Aransas Cnty. Indep. Sch. Dist.*, 570 F.2d 541, 544 (5th Cir. 1978)) ("The [C]ourt may dismiss an action *sua sponte* under Rule 41(b) for failure to prosecute or failure to obey a court order."); *Dyer v.*

**BACKGROUND**

As outlined in the Court's previous Order [Doc. 26], this is the second iteration of

Plaintiffs' case filed in this Court. On August 7, 2024, the Court dismissed Plaintiffs'

earlier suit for insufficient service of process. *See Downing v. Thompson*, No. 5:23-CV-

00501-TES, 2024 WL 3700199, at *1 (M.D. Ga. Aug. 7, 2024). A week later, Plaintiffs filed

the current action. [Doc. 1]. In their Complaint [Doc. 1], Plaintiffs bring claims against

four different sets of parties. First, Plaintiffs allege claims against officer-Defendants for

searching their home. [Doc. 1, pp. 7-8]. Second, Plaintiffs quibble with employees of the

District Attorney's Office and Bibb County Sheriff's Office for mishandling their

property. [*Id.* at pp. 9-10]. Third, Plaintiffs sue attorney Travis Griffin for his efforts as

Plaintiff Tavern Downing, Sr.'s[2] counsel in the criminal action. [*Id.* at p. 11]. And finally,

Plaintiffs bring claims against news stations for covering the story of Downing's arrest.

[*Id.* at p. 12]. This Motion only covers the "Media Defendants;" so the factual allegations

are narrowed to those parties.

On February 15, 2019, officers "invaded" the "Tavern Downing home," and

ultimately "searched and seized over 600 bitcoins and destroyed" Downing's

laboratory, research chemicals, and home. [Doc. 1, p. 7]. Plaintiffs contend that

---

*Atlanta Indep. Sch. Sys.*, 852 F. App'x 397, 400 (11th Cir. 2021) ("[P]*ro se* parties are still required to follow the rules of court[.]").

[2] Since he is central to most of the claims, the Court refers to Tavern Downing, Sr. as "Downing" throughout the Order.

preceding this search, Arrington—a USPS inspector—delivered a package with a "trip wire to set off an alert" once someone opened the package. [*Id.*]. According to Plaintiffs, the package contained one pound of MDMA. [*Id.*].

The trip wire never triggered, so the officers "forced their way into the residence . . . began screaming and yelling and storming the home." [*Id.*]. The officers "placed everyone in handcuffs and began to interrogate [and] humiliate everyone." [*Id.*]. The officers then questioned Plaintiffs regarding the drugs, threatening jail time if they did not cooperate. [*Id.*].

Following the search of the home, officers placed Plaintiffs outside in front of a crowd of neighbors and other witnesses. [*Id.* at p. 8]. Finally, officers escorted Downing to a transport van and took him to jail. [*Id.*]. After the entire event unfolded, the Media Defendants posted news stories detailing what occurred. [*Id.* at p. 4]; *see also* [Doc. 25-3; [Doc. 25-4].

Plaintiffs' Complaint presents 14 total counts, but only 2 counts apply to the Media Defendants. Those relevant counts include count 7: defamation; and count 10: fraud/misrepresentation of facts. [Doc. 1, pp. 4–6].

## LEGAL STANDARD

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true)

that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d

1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a

well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*,

550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual

allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-

harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide

whether a complaint survives a motion to dismiss, district courts are instructed to use a

two-step framework. *Id.* The first step is to identify the allegations that are "no more

than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are

not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the

conclusory allegations, the second step is to "assume any remaining factual allegations

are true and determine whether those factual allegations 'plausibly give rise to an

entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal

when it fails to "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels

and conclusions or a formulaic recitation of the elements of a cause of action."

*McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at

555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

5

## DISCUSSION

Plaintiffs bring state-law claims[3] of defamation and fraud/misrepresentation against the Media Defendants. In their Motion, the Media Defendants first seek dismissal based on the expiration of the applicable statute of limitations. That means the Court must apply Georgia's statute of limitations to Plaintiffs' claims to evaluate their timeliness. *See, e.g.*, *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

### I.   Count 7

Count 7 alleges a state-law defamation claim. Under Georgia law, defamation actions must be "brought within one year from the date of the alleged defamatory acts (regardless of whether or not plaintiff had knowledge of the act or acts at the time of their occurrence)." *Davis v. Hosp. Auth. of Fulton Cnty.*, 269 S.E.2d 867, 870 (Ga. Ct. App. 1980); *see also* O.C.G.A. § 9-3-33. Here, Plaintiff allege the Media Defendants committed defamation on February 15, 2019.[4] That means the relevant statute of limitations ran on

---

[3] To the extent Plaintiffs intended to bring § 1983 claims against the Media Defendants, those claims fail as a matter of law because there is no allegation that the Media Defendants engaged in "state action." *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982); *Stevens v. Plumbers & Pipefitters Loc. 219*, 812 F. App'x 815, 819 (11th Cir. 2020).

[4] Although the Complaint alleges the defamation occurred on February 15, 2019, Plaintiffs' exhibits show the news stories were posted on February 18, 2019. *See* [Doc. 25-4]. Regardless, the three-day difference doesn't save the claims.

February 15, 2020.[5] Plaintiffs didn't file this action until August 14, 2024—far too late.[6]

Accordingly, the Court **DISMISSES** Plaintiffs' state-law defamation claims in count 7

as to the Media Defendants **with prejudice**.[7]

## II.    Count 10

Plaintiffs bring a claim of fraud/misrepresentation of facts in count 10, but that

claim fares no better. In Georgia, claims for fraud and misrepresentation must be

brought within four years. *See Coe v. Proskauer Rose, LLP*, 878 S.E.2d 235, 241 (Ga. 2022).

Again, Plaintiffs allege that the Media Defendants committed fraud/misrepresentation

on February 15, 2019.[8] [Doc. 1, p. 5]. That means the relevant statute of limitations ran

on February 15, 2023. Relevant here, Georgia tolled the statute-of-limitations period

during the COVID-19 pandemic for 122 days. *First Merit Credit Servs. v. Fairway*

*Aviation, LLC*, 860 S.E.2d 126, 132 (Ga. Ct. App. 2021) (describing the Supreme Court of

---

[5] The COVID-19 judicial emergency also does not extend Plaintiffs' filing period because the judicial emergency began on March 14, 2020—after the relevant statute of limitations expired. *See Beauparlant v. Aiken*, 868 S.E.2d 482, 484 (Ga. Ct. App. 2022).

[6] And, even applying Georgia's renewal statute—O.C.G.A. § 9-2-61—does not save Plaintiffs' case. Indeed, for the renewal statute to apply, the original action must be filed within the applicable statute of limitations. See O.C.G.A. § 9-2-61(a); *see also Harvey v. Daniels*, 625 F. App'x 499, 502 (11th Cir. 2015). Plaintiffs filed the first action on December 13, 2023—also outside of the statute of limitations. *See* Complaint, *Downing v. Thomas*, No. 5:23-cv-00501-TES (M.D. Ga. Dec. 13, 2023), ECF No. 1.

[7] Any separate claim for conspiracy fails for the same reasons. *Davis v. City of N.Y.*, No. 5:21-CV-00156-TES, 2021 WL 2003556, at *2 (M.D. Ga. May 19, 2021) ("Moreover, where a tort claim fails as a matter of law—pursuant to an expired statute-of-limitations period, for instance—a conspiracy claim also fails.").

[8] Once again, the exhibits show the stories were posted on February 18, 2019, but that does not change the outcome. *See supra* n.4.

Georgia's Emergency Order and holding: "The 122-day tolling provision has been included in all subsequent extensions of the emergency order."). Therefore, Plaintiffs statute of limitations ran on June 21, 2023. However, again, Plaintiff did not file suit until August 14, 2024. [Doc. 1].[9] Accordingly, the Court **DISMISSES** count 10 against the Media Defendants **with prejudice**.

**CONCLUSION[10]**

In sum, the Court **GRANTS** the Media Defendants' Motion to Dismiss [Doc. 14] and **DISMISSES** counts 7 and 10 as to Defendants Morris Network, Inc., d/b/a WMGT-TV, and Sinclair Communications, LLC, d/b/a WGXA. Since those are the only claims against those Defendants, the Court **DIRECTS** the Clerk to **TERMINATE** Morris Network, Inc., d/b/a WMGT-TV, and Sinclair Communications, LLC, d/b/a WGXA as parties to this action.

**SO ORDERED**, this 19th day of November, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] And, as explained *supra* n.6, Georgia's renewal statute doesn't save this claim, either, because Plaintiffs did not file the original action within the applicable statute of limitations.

[10] Defendants make numerous arguments in the alternative. However, because the Court dismisses these counts based on the statute of limitations, it does not address Defendants' remaining arguments on the merits.